UNITED STATES of America,
Plaintiff-Appellee,

v.

Jack Moody STRICKLIN, Jr.,
Defendant-Appellant.

No. 77–3072.

United States Court of Appeals,
Fifth Circuit.

March 23, 1979.

1114

Lee A. Chagra, El Paso, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., James Kerr, LeRoy Morgan Jahn, W. Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before COLEMAN, GEE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This is an appeal by Jack Moody Stricklin, Jr., from the District Court's denial of his motion to dismiss an indictment handed down in El Paso, Texas, on double jeopardy grounds. The pretrial order rejecting Stricklin's claim that two previous indictments handed down in Tennessee and New Mexico resulted in former jeopardy is properly before us as a final decision within the meaning of 28 U.S.C. § 1291. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The issue in this case is whether the District Court correctly denied Stricklin's motion to dismiss. We affirm the District Court with respect to the substantive charges of importing and of aiding and abetting, as well as the importation conspiracy charge, but reverse and remand on the possession with intent to distribute conspiracy charge and the continuing criminal enterprise charge so that the District Court can rehear that part of the motion and apply the procedural standards set forth below.

## I. *The Indictments*

The Tennessee indictment was returned against Stricklin on August 23, 1973. The District Court's order that the government supplement the indictment with a bill of particulars was complied with on January 21, 1975. The government charged that

Stricklin conspired with thirty-nine co-defendants and others whose names were unknown to distribute and possess with intent to distribute marijuana, a schedule I non-narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and the predecessor of those statutes, 21 U.S.C. § 176a. It was also charged that the defendants and unknown coconspirators did unlawfully possess with intent to distribute and distribute marijuana in violation of first 21 U.S.C. § 176a and 18 U.S.C. § 2 and then 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The indictment charged that the conspiracy continued from on or about December, 1970, to August 23, 1973. The bill of particulars recited overt acts in El Paso, Texas; Murfreesboro, Tennessee; Lebanon, Tennessee; Dickson, Tennessee; Atlanta, Georgia; Nashville, Tennessee; Toronto, Canada; Louisville, Kentucky; Knoxville, Tennessee; Winchester, Tennessee; Orlando, Florida; Cookeville, Tennessee; and Tucson, Arizona, between May, 1971, and May, 1973.

The New Mexico indictment was returned against Stricklin on August 29, 1974. This indictment charged that Stricklin conspired with five codefendants and others whose names were unknown to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a). They were also charged with unlawful possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The indictment charged that the conspiracy took place on or about August 18, 1974, in the State and District of New Mexico, and elsewhere. The possession was alleged to have occurred on or about August 18, 1974, in New Mexico.

The original Texas indictment was returned against Stricklin on June 16, 1977, and a superceding indictment was returned on September 15, 1977.[1] The original in-

---

1. A superceding indictment may be returned at any time before a trial on the merits. *United States v. Herbst*, 565 F.2d 638, 643 (10th Cir. 1977); *United States v. Millet*, 559 F.2d 253, 257–58 (5th Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 759 (1978); *United States v. White*, 524 F.2d 1249, 1253 (5th Cir. 1975), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976). Indeed, two indictments may be outstanding at the same time for the same offense if jeopardy has not attached to the first indictment. *United States v.*

dictment charged that Stricklin: (1) conspired with thirteen coconspirators and others whose names were unknown to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963; (2) did import and cause to be imported marijuana in violation of 21 U.S.C. §§ 960(a)(1) and 952(a); (3) conspired with thirteen coconspirators and others whose names were unknown to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; (4) aided and abetted two individuals (named as coconspirators) on three separate occasions in their unlawful possession of marijuana in violation of 21 U.S.C. § 841(a)(1) and thus violated 18 U.S.C. § 2; and (5) engaged in a continuing criminal enterprise by virtue of his marijuana transactions and thus violated 21 U.S.C. § 848. The importation conspiracy was alleged to have continued from on or before September, 1971, to on or about June 24, 1976, in the Western District of Texas, the States of New Mexico, Georgia, and Tennessee, the Republic of Mexico, and other places unknown to the grand jury. This conspiracy count recited fourteen overt acts in El Paso, Texas; Carlsbad, New Mexico; the Republic of Mexico; Magdalena, New Mexico; and the Western District of Texas, between September, 1971, and November, 1973. The substantive importation count alleged the Western District of Texas as the *locus criminis* and July 18, 1972, as the approximate time that the offense occurred. The possession conspiracy was alleged to have taken place during the same time frame and in the same locations as the importation conspiracy. The twelve overt acts recited in support of the possession conspiracy were identical to

twelve of the overt acts recited in the importation conspiracy count and thus covered the same time frame and area as did that count. The three aiding and abetting violations were alleged to have taken place in the Western District of Texas on June 22, 1972; July 5, 1972; and July 18, 1972. The original indictment lastly charged Stricklin with operating a continuing criminal enterprise by virtue of his status in the marijuana transactions recited in the previous counts; this enterprise was alleged to have operated from on or before June 18, 1972, until on or about June 24, 1976, in the Western District of Texas, the Republic of Mexico, the District of Columbia, New Mexico, North Carolina, Georgia, Minnesota, and other places unknown to the grand jury.

The superceding indictment was not prepared and filed until *after* the double jeopardy hearing where Stricklin had pointed out the apparent overlaps between the New Mexico indictment and the then pending Texas indictment. The superceding indictment charged Stricklin with essentially the same importation and possession conspiracies as charged in the original indictment, except that the names of five coconspirators were deleted and the reference to Tennessee as one of the locations for the conspiracies was omitted. Five overt acts were also eliminated from each conspiracy count, shortening the time span for the acts supporting the importation conspiracy to on or about December, 1971, to November, 1972, and for the acts supporting the possession conspiracy to on or about December, 1971,

*Cerilli*, 558 F.2d 697, 700 (3d Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 507 (1977); *United States v. Holm*, 550 F.2d 568, 569 (9th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed. 127 (1977); *United States v. Grady*, 544 F.2d 598, 602 n. 4 (2d Cir. 1976); *De Marrias v. United States*, 487 F.2d 19, 21 (8th Cir. 1973), *cert. denied*, 415 U.S. 980, 94 S.Ct. 1570, 39 L.Ed.2d 877 (1974); *United States v. Garcia*, 412 F.2d 999, 1000 (10th Cir. 1969). Since the original indictment apparently was never dismissed, there are technically two pending indictments against Stricklin, and it appears that the government may select one of them with which to proceed to trial. *United*

*States v. Cerilli*, 558 F.2d at 700 n. 3. The superceding indictment was not filed until after the pretrial double jeopardy hearing, so that Stricklin's argument at the hearing was concerned with the original indictment. The District Court, however, referred only to the superceding indictment's conspiracy charges in its order denying Stricklin's motion. At oral argument, the government indicated that it may attempt to proceed on a combination of the two indictments because the superceding indictment deals only with a portion of the original indictment's charges. Hence, we will consider both indictments for purposes of this review.

to October, 1972. The omission of these acts also deleted the references to Magdalena, New Mexico, one of the references to El Paso, Texas, and the references to two of the originally named coconspirators who were not included in the charging portions of the superceding indictment. Basically, the government simply carved out and discarded those specific references to those specific overlaps.

The Tennessee indictment was dismissed with prejudice on March 18, 1975, because of the government's failure to grant Stricklin a speedy trial in accord with his constitutional right under the Sixth Amendment. The New Mexico indictment resulted in a conviction on both counts on March 14, 1975, and Stricklin received a five year prison sentence. The Texas indictment was returned on June 16, 1977. On August 17, and 26, 1977, Stricklin moved before the District Court to dismiss the Texas indictment on the grounds that the Tennessee indictment, which was dismissed with prejudice, and the New Mexico indictment, which resulted in his conviction, had placed him in former jeopardy. A pretrial double jeopardy hearing took place on August 31, 1977; the government filed the superceding indictment on September 15, 1977; and the District Court issued an order denying Stricklin's motion on September 27, 1977. The District Court found that the four substantive counts pertaining to unlawful importation and possession with intent to distribute marijuana within the Western District of Texas presented no possible double jeopardy problem. With regard to the two conspiracy counts, the District Court found that a comparison of the Tennessee and New Mexico indictments with the superceding indictment in Texas, in light of the evidence obtained at the hearing, reflects that each alleges different transactions and overt acts and that, in any event, jeopardy had never attached in the Tennessee case. Concerning the continuing criminal enterprise count, the District Court found that the government did not have sufficient proof in either the Tennessee or New Mexico conspiracy case to sustain a conviction for a violation of 21 U.S.C. § 848, so that

there was no double jeopardy bar to this subsequent prosecution for the greater offense. This appeal followed.

## II. *The Application of Abney*

*Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), held that the denial of a motion to dismiss an indictment on double jeopardy grounds results in an appealable final order. Thus, the double jeopardy issue may be decided and appealed *before* a record of the trial on the challenged indictment is made. *Abney* may be applied without serious complexity where the indictments and the record from the previous trial are sufficiently explicit to provide for clear-cut determination of the double jeopardy claim. For example, where X is once indicted and tried for the murder of Y, a subsequent indictment charging that X murdered Y would clearly violate X's Fifth Amendment right not to be twice put in jeopardy for the same offense. Where, however, the charges in two or more indictments involve crimes such as complicated or far-reaching conspiracies, as in this case, the application of *Abney* can be troublesome, especially when one of the previous indictments did not result in a trial and the creation of a record. It is necessary, then, to establish procedural rules for an *Abney* pretrial double jeopardy hearing, so that requirements such as going forward with proof, burden of persuasion, and weight of the evidence are equitably assigned to and understood by the parties. The Third Circuit was recently confronted with an identical task in *United States v. Inmon*, 568 F.2d 326 (3d Cir. 1977). We adopt their well-reasoned opinion in that case as the law in this Circuit, along with such modifications and additions as our comments may provide.

It is undisputed that the burden of going forward by putting the double jeopardy claim in issue is and should be on the defendant. It is similarly reasonable to require the defendant to tender a prima facie nonfrivolous double jeopardy claim before the possibility of a shift of the burden of persuasion to the government comes into

play. Once the defendant has come forward with such a prima facie nonfrivolous claim, however, we are faced with determining whether the defendant or the government should carry the burden of persuasion from that point forward. The Third Circuit in *Inmon* concluded that the burden should then be placed on the government, basing its decision on practical considerations concerning access to proof and on the government's control over the particularity with which indictments are drafted. 568 F.2d at 329–32. *Accord, United States v. Mallah*, 503 F.2d 971 (2d Cir. 1974), *cert. denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). We agree, for similar reasons, that the burden of establishing that the indictments charge separate crimes is most equitably placed on the government when a defendant has made a nonfrivolous showing that an indictment charges the same offense as that for which he was formerly placed in jeopardy.

 The defendant might make the necessary prima facie nonfrivolous showing of double jeopardy by reference to the indictments, as supplemented by a bill of particulars if appropriate and ordered, and other record material, alone. He might find it necessary to offer his own testimony at the pretrial hearing. If the latter course is followed, the defendant will not thereby waive the privilege against self-incrimination and his testimony may not subsequently be used against him at the trial on the merits. In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that a defendant may testify in a pretrial suppression hearing directed at vindication of Fourth Amendment rights without fear that his testimony will be used against him at the subsequent trial. The Supreme Court reasoned that any other rule would inhibit defendants from asserting Fourth Amendment claims and would require that one constitutional right be surrendered in order to assert another. 390 U.S. at 392–94, 88 S.Ct. 967. We agree with the *Inmon* Court that the reasoning in *Simmons* is also controlling in a pretrial double jeopardy hearing.

 Other evidence normally available to the defendant at the pretrial stage may, of course, also be offered in his attempt to make a prima facie showing of former jeopardy, but our resolution of *Abney's* procedural problems in no way expands or alters the discovery now available to defendants. Material which is presently unavailable to the defendant through discovery or any other means is not made more accessible by our holding in this case.

The impracticality of placing the burden of persuasion on the defendant in this situation is obvious in light of his lack of access to the proof on which the government proposes to rely and his inability to offer immunity to prospective witnesses. *See United States v. Herman*, 589 F.2d 1191 (3d Cir.) (1978); *United States v. Inmon*, 568 F.2d at 329–30; *United States v. Allstate Mortgage Corp.*, 507 F.2d 492, 494–95 (7th Cir. 1974), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); *United States v. Smith*, 436 F.2d 787, 790 (5th Cir.), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). Where a prior indictment resulted in a guilty plea or was dismissed, so that there is no record of the evidence supporting the prior indictment, the defendant is even further handicapped. The government is clearly in a better position to show that the crime charged in the present indictment is not the same as one charged in a previous indictment than the defendant is to show that the crimes are the same.

The government's responsibility for securing an indictment which is sufficiently detailed to inform the defendant of the charges against him and to allow him later to claim the defense of double jeopardy if he be again charged with that crime further justifies placing the burden of persuasion on the government. *See Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Traditionally, courts have been understandably reluctant to interfere and require more particularity on potential double jeopardy grounds; it is a most difficult task to look ahead down the road and predict what future crimes may be

charged by a subsequent indictment. Since the government controls the particularity of an indictment, it should bear the responsibility for any ambiguities resulting in its vagueness that are left unresolved by a bill of particulars. The government may be said to make the following representation to the court when it proceeds on an indictment: "This indictment is sufficient. If the defendant is hereafter charged on another indictment and it appears prima facie that this indictment has already charged him with that offense, then we accept the burden of showing that the new charge is different." From the government's point of view, its interests are also served by securing detailed indictments because a meritless claim of double jeopardy in a subsequent case will be easier to refute. We hope that the salutary effect of our assigning the burden as we do will be more carefully drawn indictments, especially in conspiracy cases where the tendency is to use all-encompassing, vague language.

Once the burden of persuasion has shifted to the government by virtue of the defendant's presentation of a prima facie nonfrivolous claim of prior jeopardy, the government is not compelled to come forward with any particular kind of evidence. It may present however much or little evidence as it deems advisable, subject, of course, to dismissal of the indictment if not enough evidence to rebut the defendant's prima facie showing is introduced. The weight of the evidence by which the government must demonstrate that two separate crimes are charged is a preponderance of the evidence. Again, our conclusion comports with that of the Third Circuit in *Inmon*, wherein they point out that the Fifth Amendment double jeopardy privilege is personal and waivable and not an element of the crime, so that a heavier evidentiary burden is, by implication, not constitutionally required by *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (voluntariness of confession may be determined by preponderance of the evidence). 568 F.2d at 332. The determination of whether or not a prima facie claim of double jeopardy has been shown and, if so,

rebutted by a preponderance of the evidence is best made by the court and not by the jury. The likelihood of compelling the defendant to make possibly incriminating statements to the jury about the earlier offense in his defense to the subsequent charge or of prejudicing the jurors against the defendant by virtue of their hearing about the charge and evidence in the previous case is thus eliminated.

Although the government may not be forced to reveal to the defendant any materials or information not otherwise available through discovery or other means, it might choose to submit such material to the District Court for *in camera* inspection and might thus carry its burden of persuasion.

Even if the government does carry its burden of persuasion and the defendant's motion to dismiss is denied, the District Court may later vacate its finding of no prior jeopardy as the evidence develops at trial if the defendant renews his motion and the evidence shows that there was, in fact, prior jeopardy. The ruling by the District Court on the pretrial motion merely decides whether or not, upon the evidence *then before the court*, double jeopardy appears. On an *Abney* appeal, the correctness of that ruling, alone, will be reviewed. Neither the District Court's nor the Circuit Court's pretrial decision will be binding as res judicata, law of the case, collateral estoppel, or any other theoretical bar as to the double jeopardy issue in the case.

### III. *Stricklin's Double Jeopardy Claim*

We turn now to the application of the procedural rules heretofore discussed to the facts in this case. Stricklin claims that the Double Jeopardy Clause of the Fifth Amendment bars the government's attempt to prosecute him in Texas on the conspiracies charged because the alleged conspiracies were encompassed in conspiracies alleged in two previous indictments pursuant to which he was subjected to jeopardy. Close analysis of this case reveals that we

are actually confronted with an unusual and complex blend of double jeopardy and speedy trial problems.

### A. The Tennessee Indictment

 We begin our analysis with the observation that the Tennessee indictment's dismissal with prejudice for violation of Stricklin's speedy trial rights under the Sixth Amendment did not invoke jeopardy. *United States v. Marion,* 404 U.S. 307, 312, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). A motion to dismiss before trial for lack of speedy prosecution has

> nothing to do with guilt or innocence or the truth of the allegations in the indictment but [is], rather, a plea in the nature of confession and avoidance, that is, where the defendant does not deny that he has committed the acts alleged and that the acts were a crime but instead pleads that he cannot be prosecuted because of some extraneous factor, such as . . . the denial of a speedy trial.

404 U.S. at 312, 92 S.Ct. at 459. For a jury trial, jeopardy attaches when the jury is empaneled and sworn. For a bench trial, jeopardy attaches when the judge begins to receive evidence. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *Illinois v. Somerville,* 410 U.S. 458, 471, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). This Court noted in *United States v. Pitts,* 569 F.2d 343, 347 n. 5 (5th Cir.), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978), that "[s]ufficient constitutional and statutory measures protect defendants in cases that might be tainted by an overzealous prosecutor abusing the rules marking the attachment of jeopardy to make abandonment of those rules unnecessary" where a previous indictment had been dismissed at the government's request. In this case, Stricklin's Sixth Amendment constitutional right to a speedy trial protects him from the government's again bringing those charges contained in the Tennessee indictment which was dismissed with prejudice on constitu-

tional speedy trial grounds. Stricklin cannot be reindicted for the same crime because Sixth Amendment speedy trial rights could, otherwise, be easily bypassed. *Mann v. United States,* 113 U.S.App.D.C. 27, 30, 304 F.2d 394, 397, *cert. denied,* 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1972). *Accord, United States v. Simmons,* 536 F.2d 827, 833 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976); *United States v. Correia,* 531 F.2d 1095, 1097 (1st Cir. 1976); *United States v. Clay,* 481 F.2d 133, 135 (7th Cir.), *cert. denied,* 414 U.S. 1009, 97 S.Ct. 371, 38 L.Ed.2d 247 (1973); *United States v. Beidler,* 417 F.Supp. 608, 616 (M.D.Fla. 1976).

 While Stricklin cannot be reindicted for the same conspiracy for which he was charged in the Tennessee indictment, the government is not barred from using the underlying facts in that offense as the basis for a charge that he committed a different offense. As we noted in *United States v. Rivero,* 532 F.2d 450, 457 (5th Cir. 1976), "the dismissal of the indictment, with or without prejudice, does not amount to the determination of any of the intrinsic underlying facts. What, and all, it stands for, is that the defendant cannot be reindicted or tried for that same charge."

 We do not reach the question of whether the Texas indictment is barred under the Sixth Amendment by virtue of charging Stricklin with the same crime as charged in the dismissed Tennessee indictment. While *Abney* establishes that the denial of a double jeopardy claim is a final and appealable decision within the meaning of 28 U.S.C. § 1291, there is no comparable jurisdictional basis on which to exercise pretrial review of an indictment which is potentially barred by Sixth Amendment speedy trial considerations. The Supreme Court recently held in *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), that a defendant may not, *before* trial, appeal a federal district court's order denying his motion to dismiss an indictment because of an alleged violation of his Sixth Amendment right to a speedy trial. *Accord, United States v. Bai-*

*ley,* 512 F.2d 833 (5th Cir.), *cert. dismissed,* 423 U.S. 1039, 96 S.Ct. 578, 46 L.Ed.2d 415 (1975). Stricklin's situation is different from that found in *MacDonald* since the possible violation of his rights lies in his being reindicted on the same charges which were the subject of an indictment already dismissed on speedy trial grounds rather than in his being brought to trial on the first indictment, as in *MacDonald.* The basic consideration in both cases, however, is whether the defendants' speedy trial rights will be violated by the impending prosecutions, and for us to expand appellate jurisdiction to include the situation where the dismissed indictment is claimed to bar a subsequent indictment on speedy trial grounds would be unwarranted.

In any event, the argument is not properly before us because Stricklin incorrectly bases his argument regarding the Tennessee indictment on double jeopardy grounds rather than on speedy trial grounds. Our discussion of the speedy trial aspects of this case is a necessary part of our rejection of Stricklin's double jeopardy claim concerning the Tennessee indictment. We anticipate that the defendant will take heed on remand and make the proper argument; the District Court will then, of course, make the proper analysis.

### B. The New Mexico Indictment

There is no doubt that jeopardy attached in the trial on the New Mexico indictment; Stricklin was convicted on charges of possession with intent to distribute marijuana and conspiracy to possess with intent to distribute marijuana. We must now discern whether or not Stricklin has brought forth a prima facie nonfrivolous claim that the government seeks to charge him again for the same crime in the Texas indictment.

In the double jeopardy context, the position of the parties is reversed from that usually taken in trials of conspiracy cases. In the latter, it is usually the government's position that all similar conduct proven is part of one far-reaching conspiracy. The defendant generally asserts that, if conspiracy be shown at all, his activity was separate from, and not connected with, the conspiracy charged.

In the dispute over double jeopardy, however, it is the defendant who asserts that the earlier indictment was sufficiently broad to encompass all of his conduct, and the government asserts the narrow, limited scope of its earlier indictment. Here, Stricklin insists that the New Mexico indictment covered certain conduct for which he is now indicted in Texas, and the government argues that the New Mexico indictment was limited in scope to the single transaction recited therein. This conflict sufficiently demonstrates the need for care and definition in the drawing of indictments in conspiracy cases.

At his double jeopardy hearing, Stricklin introduced material obtained in a Nevada trial under the Jenck's Act. This evidence tends to show that Stricklin entered into a conspiracy with Don Johnson and Tim Melancon, two of the conspirators named in the original Texas indictment, to import marijuana into the United States after the Tennessee conspiracy was terminated.[2] It appears from the evidence in the record that two loads of marijuana were flown to New Mexico from the Republic of Mexico by Don Johnson and Tim Melancon. The first load was apparently the load that was involved in those overt acts taking place in March and November of 1973, near Magdalena, New Mexico, and mentioned in both the conspiracy to import count and the conspiracy to possess with intent to distribute count of the original Texas indictment. The second load was seized in New Mexico on August 18, 1974, in Stricklin's possession; this incident served as the basis of the New Mexico indictment and conviction. With regard to that portion of the original Texas

---

**2.** Stricklin asserts that the New Mexico conspiracy was a different conspiracy than the one with which he was charged in Tennessee. Even if the New Mexico conspiracy had been a continuation of the Tennessee conspiracy, further operation of the "old" conspiracy after being charged with that crime becomes a new offense for purposes of a double jeopardy claim.

indictment which Stricklin asserts refers to the New Mexico conspiracy to possess with intent to distribute for which he was previously convicted, Stricklin's burden of coming forth with a prima facie nonfrivolous double jeopardy claim is met. We pointed out in *United States v. Ruigomez*, 576 F.2d 1149, 1151 (5th Cir. 1978), that "the relevant question [in narcotics conspiracy cases] is . . . whether the particular transactions alleged in the indictments were within a larger, unified conspiracy." The evidence which Stricklin proffers satisfies

> the usual tests for determining the existence of a unified conspiracy—the participants shared a continuing, common goal of [importing] marijuana for profit; the operations of the conspiracy followed an unbroken and repetitive pattern; and the cast of conspirators remained much the same.

576 F.2d at 1151. As we indicated in *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978),

> [o]ur examination of the record focuses upon these elements: (1) time, (2) persons acting as coconspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

Our consideration of the foregoing factors leads to the conclusion that Stricklin makes a prima facie showing that the events charged in the original Texas indictment relating to the Magdalena episode and the events charged in the New Mexico indictment were part of a single agreement.

The government's obtaining a new indictment subsequent to the hearing, which deletes all references to Don Johnson, Tim Melancon, and the Magdalena, New Mexico, episode is of no consequence to our finding, for, as we pointed out earlier, the original indictment was never dismissed. In fact, the government's revision of the conspiracy counts may not bode well for their assertion

that the conspiracies for which they seek to prosecute in the Texas indictment are clearly distinct from the conspiracies for which Stricklin has previously been indicted.

■■■■ Stricklin's prima facie showing of former jeopardy goes only to the conspiracy count for possession with intent to distribute and not to the conspiracy count for importation or to the substantive counts for aiding and abetting the unlawful possession of marijuana and for importation. The government may constitutionally charge a defendant with conspiracy to import, as well as with conspiracy to possess with intent to distribute, despite the existence of only one conspiratorial agreement. *United States v. Marable*, 578 F.2d at 154 n. 1; *United States v. Ruigomez*, 576 F.2d at 1151 n. 2; *United States v. Dyar*, 574 F.2d 1385, 1389–90 (5th Cir. 1978); *United States v. Houltin*, 525 F.2d 943, 950–51 (5th Cir.), *vacated on other grounds, sub nom. Croucher v. United States*, 429 U.S. 1034, 97 S.Ct. 725, 50 L.Ed.2d 745 (1976). The Double Jeopardy Clause imposes few limits on the legislative power to define offenses, and Congress may choose to punish two aspects of conspiratorial behavior without violating the Fifth Amendment. *See United States v. Sanabria*, 437 U.S. 54, 70 n. 24 and accompanying text, 98 S.Ct. 2170, 2181–82, 57 L.Ed.2d 43 (1978).

■■■■ Similarly, each of the three substantive counts for aiding and abetting and the substantive count for importation allege separate offenses. *See Iannelli v. United States*, 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Pereira v. United States*, 347 U.S. 1, 11–12, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Stricklin was convicted under the New Mexico indictment of possessing marijuana with intent to distribute on or about August 18, 1974. The possession offenses which he is charged in the Texas indictment with having aided and abetted took place on June 22, 1972; July 5, 1972; and July 18, 1972. The importation offense is alleged to have occurred on July 18, 1972. Clearly, the conviction for the substantive offense in the New Mexico indictment did not constitute prior jeopardy

for the substantive offenses charged in the Texas indictment.[3]

 Stricklin's final argument is that the Texas indictment's continuing criminal enterprise charge under 21 U.S.C. § 848[4] is barred by the Double Jeopardy Clause as interpreted in *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). *Jeffers* and *Brown* deal with the Double Jeopardy Clause in the context of greater and lesser included offenses. *Jeffers* is particularly pertinent to this case because the two offenses involved there were a conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. § 846 and a continuing criminal enterprise to violate the drug laws in violation of 21 U.S.C. § 848. Although the facts in *Jeffers* made it unnecessary to settle definitively the issue of whether § 846 is a lesser included offense of § 848, 432 U.S. at 152–53 n. 20, 97 S.Ct. 2207, the Court's discussion of the issue indicates that the question would be answered affirmatively because § 848 requires proof of an agreement among the persons involved in the continuing criminal enterprise and thus requires proof of every fact necessary to show a violation under § 848 as well as proof of several additional elements. *Id.* at 147–54, 97 S.Ct. 2207. *See also Id.* at 160 n. 7, 97 S.Ct. 2207 (Stevens, J., concurring in part). Furthermore, it is our conclusion that § 846 is a lesser included offense of § 848 where the agreement and transactions involved in the two cases are the same. A double jeopardy defense will lie where the government has previously prosecuted a defendant under either § 846 or § 848 and then seeks to prosecute him again on the basis of the same criminal agreement under the other statute. "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Brown v. Ohio*, 432 U.S. at 169, 97 S.Ct. at 2227. Even if the defendant shows that the conspiracy for which he was prosecuted under § 846 is the same conspiracy which serves as an element of his § 848 prosecution, the double jeopardy inquiry does not necessarily end there.

An exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence. *See Diaz v. United States*, 223 U.S. 442, 448–449 [32 S.Ct. 250, 56 L.Ed. 500] (1912), *Ashe v. Swenson, supra*, [397] at [436] 453 n. 7 [90 S.Ct. 1189, 25 L.Ed.2d 469] (Brennan, J. concurring). *Id.* at 169 n. 7, 97 S.Ct. at 2227.

 Our application of *Jeffers* and *Brown* to the facts in this case begins with determining whether or not Stricklin has made a prima facie nonfrivolous showing that the agreement and transactions which served as the basis for his New Mexico § 846 conspiracy conviction are the same as those involved in the continuing criminal enterprise charge in the Texas indictment. The continuing criminal enterprise count alleges that all of the other violations alleged in the indictment were a part of a continuing series of violations which were conducted in violation of § 848. Hence, the importation and aiding and abetting offenses which do not violate the Double Jeopardy Clause, as well as the possession

---

**3.** A defendant could successfully argue double jeopardy where two separate substantive offenses are involved if a plea bargain on the prior indictment led to dismissal of the offense thereafter charged in the subsequent indictment.

**4.** A person engages in a continuing criminal enterprise, as defined in 21 U.S.C. § 848(b)(2), if he violates the Drug Act in a continuing series of such violations

 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

 (B) from which such person obtains substantial income or resources.

*United States v. Bolts*, 558 F.2d 316, 320 (5th Cir.), *cert. denied, sub nom. Hicks v. United States*, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977).

conspiracy offense which at least in part may violate double jeopardy protection, serve as the basis of the continuing criminal enterprise charge. Stricklin has thus made out a prima facie case that the possession conspiracy and transactions for which he was convicted in New Mexico and which are alluded to in the Magdalena portions of the original Texas indictment may not be used to show the "in concert" element of the § 848 offense.[5] Since Stricklin has not been subjected to prior jeopardy for the importation conspiracy offense, however, the inclusion of that agreement as part of the foundation of the § 848 charge is not violative of the Fifth Amendment's double jeopardy protection. The attachment of jeopardy to one conspiracy prosecution under § 846 does not insulate a defendant from prosecution for conducting a continuing criminal enterprise in violation of § 848 if the government has evidence of a separate conspiracy with which to satisfy the "in concert" element of § 848. Just as a defendant may be involved in more than one conspiracy over a period of time, he might also be the conductor of more than one continuing criminal enterprise.

## C. The Consequences of Stricklin's Nonfrivolous Double Jeopardy Claim

We have found that Stricklin brought forth a nonfrivolous prima facie claim of double jeopardy with regard to at least that part of the possession conspiracy count in the original Texas indictment relating to the Magdalena episode and with regard to that portion of the continuing criminal enterprise charge which refers to the Magdalena episode and agreement as evidence of the "in concert" element of the crime. We realize that neither the District Court, the government, nor the defendant was aware at the time of the double jeopar-

dy hearing that the burden of proof to show there was no former jeopardy is on the government once the defendant has made a nonfrivolous showing of double jeopardy. The inference that the burden of persuasion in such a situation remains on the defendant could be drawn from earlier Fifth Circuit cases. See United States v. Parker, 582 F.2d 953, 954 n. 2 (5th Cir. 1978), citing Rothaus v. United States, 319 F.2d 528, 529 (5th Cir. 1963) and Reid v. United States, 177 F.2d 743, 745 (5th Cir. 1949); United States v. Inmon, 568 F.2d 326, 331 (3d Cir. 1977). Parker and Inmon recognized, however, that Rothaus and Reid, on which the inference is based, were decided before Abney. As such, they are not binding authority on the issue of where the burden of persuasion lies in an appealable pretrial determination of a double jeopardy claim. Abney's requirement that the double jeopardy issue be resolved before trial demands that new considerations become controlling and the burden is thus shifted. The records were fully developed when post-trial appeals of double jeopardy claims were the rule prior to Abney, and the defendant could carry the burden of proving double jeopardy without unreasonable strain. To subject the defendant to that burden before the records are developed at trial, however, would be unreasonable, especially when the government has exclusive access to some of the possibly determinative materials at that time. For that reason, as well as the others discussed in part II of this opinion, we assign the burden of persuasion in a pretrial double jeopardy hearing to the government upon the defendant's making a prima facie showing of prior jeopardy. However, because the parties as well as the District Court in this case were not apprised of the government's burden prior to our holding today,[6] we remand for another hearing on

---

5. The government may, in accord with the exceptions referred to in Brown v. Ohio, rebut this presumption of a limited double jeopardy violation in the continuing criminal enterprise prosecution if it is shown on remand that the additional facts necessary to sustain the § 848 charge had not occurred at the time of the New Mexico indictment or had not been discovered despite the exercise of due diligence.

6. Nor did the parties or the Court have the benefit of the Third Circuit's analysis in Inmon, for that case was decided on November 28, 1977, some three months after Stricklin's pretrial hearing.

those charges which were shown by the defendant to be prima facie violative of the Fifth Amendment, so that the government has the opportunity to carry its burden and the District Court has the opportunity to apply the proper standards in resolving the defendant's double jeopardy claims.

Assuming that Stricklin makes the speedy trial argument referred to in part I of this opinion, the District Court will also be faced on remand with reevaluation of the charges in the Tennessee indictment as compared with those in the Texas indictment. The District Court's task on remand, then, is to examine the Tennessee and New Mexico indictments and determine whether or not, in the trial on either one, he, as the presiding trial judge, would have permitted the prosecution to prove the matters now alleged in the Texas indictment. If he would have admitted evidence of those allegations, then the previous indictments bar the offending charges in the Texas indictment. This approach is in accord with the "same evidence" test of whether proof of the matter set out in a second indictment is admissible as evidence under the first indictment and, if it is, whether a conviction could have been properly sustained on such evidence. *See United States v. Marable*, 578 F.2d at 153. We recognized in *Marable* that the essence of a double jeopardy determination in a conspiracy case is whether there was more than one agreement, *id.*, but continued use of the "same evidence" test in cases such as this one may be valuable in reaching that determination.

AFFIRMED in part; REVERSED in part; and REMANDED.