**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kendell R. PATTERSON and William L. Brasher, Defendants-Appellants.**

Nos. 85–2482, 86–2221
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1987.

Michael Ramsey, George H. Tyson, Jr., Houston, Tex., for defendants-appellants.

Henry K. Oncken, U.S. Atty., James R. Gough, Stephen S. Morris, Thomas Scott Woodward, Asst. U.S. Attys., Houston, Tex., Frank D. Allen, Jr., Appellate Section, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GEE, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The defendants, Kendell Patterson and William Brasher, police officers of Houston, Texas, were convicted of violating 18 U.S.C. §§ 3, 241, and 242 after Patterson shot an uncooperative motorist whom they contended had attempted to run down Brasher. Having been previously prosecuted in state court, they appeal these convictions on grounds that they were tried in violation of the Double Jeopardy Clause, and in violation of the government's own policy respecting dual prosecution in federal and state courts. They also assert that the district court's use of an *in camera* procedure to determine the propriety of the prosecution's conduct violated various constitutional provisions. We find no merit in the defendants' contentions and accordingly affirm their convictions.

## I

On October 14, 1983, Houston police officer Kendell Patterson and his partner William Brasher, were called to the scene of an automobile accident. While Patterson was directing traffic, Mr. Bill Pressey, driving a pickup truck, approached the intersection where the accident occurred. Patterson motioned several times for Pressey to proceed, but Pressey did not do so. Patterson approached the pickup, and Pressey's pickup began to move slowly through the intersection. Patterson grabbed the mirror on the truck and trotted along side. He then fired his weapon into the truck and wounded Pressey, causing severe brain damage.

When homicide investigators arrived at the scene, Brasher told them that Pressey had attempted to run him down with the truck, and that Patterson shot when the truck accelerated sharply. Later, both Patterson and Brasher gave written statements to homicide investigators and testified before a Harris County grand jury. The defendants' statements were consistent with each other but materially inconsistent with eyewitness accounts of the incident.

Patterson was tried in state court for attempted murder but was acquitted. Brasher was convicted in state court of aggravated perjury.

The defendants were indicted by federal grand jury on March 27, 1985, for violating 18 U.S.C. §§ 3, 241 and 242. The indictment charged (1) that Patterson, while act-

ing under color of law as a police officer, violated 18 U.S.C. § 242 when he willfully deprived an inhabitant of Texas of liberty without due process of law by shooting him; (2) that Brasher, also a police officer, was an accessory after the fact, in violation of 18 U.S.C. § 3, when he made false statements concerning the shooting, knowing that Patterson had committed a criminal violation of the victim's civil rights; and (3) that the two defendants conspired to violate the victim's rights in violation of 18 U.S.C. § 241 by falsely testifying that the victim had attempted to run down Patterson with a truck. The defendants were tried February 3 through February 13, 1986. Both men were convicted by the jury on all counts. On March 21, 1986, Patterson was sentenced to seven years imprisonment and fines totalling $6,000, and Brasher was sentenced to three years' imprisonment and fines totalling $5,500.

Prior to trial, the defendants filed a motion to dismiss the indictment, claiming that Patterson's earlier trial in state court for attempted murder and Brasher's earlier state court trial for aggravated perjury had been used as "tools" of the federal prosecution and that later prosecution in federal court was barred by the Double Jeopardy Clause of the fifth amendment. They also invoked a Department of Justice policy requiring United States attorneys to obtain the approval of an assistant attorney general before initiating federal prosecutions following state prosecutions for the same criminal acts (the *"Petite"* policy). The defendants requested a pretrial hearing under the procedures established in *United States v. Stricklin*, 591 F.2d 1112 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).

At a hearing on June 6, 1985, the defendants introduced evidence showing that they had been tried in state court for state offenses. Because of the defendants' allegations of improper "collusion" between the state and federal prosecutors, the district court examined the prosecutors *in camera.*

At a further hearing on June 21, 1985, the district court said that the *in camera* examination showed that the "government has met its burden of showing that there were separate independent investigations, prosecutions throughout this matter." The court, however, also acknowledged that its *in camera* inquiry had not been required since the defendants had not first made a prima facie showing of a double jeopardy violation. After permitting defense counsel to make an extensive offer of proof as to what he believed could be shown if he were permitted to examine the federal and state prosecutors, the district court said that it did not seem that any of the evidence sought from the prosecutors or from what had been discovered *in camera* "would support the burden [the defense carried] under *Bartkus, Abbate* or *Hayes."* [1]

The court entered an opinion and order denying the motion to dismiss, and holding that the double jeopardy claim was frivolous. The court held that under the dual sovereignty doctrine, "a single act of a defendant may be denounced as a crime under both federal and state laws and the defendant may be punished by each sovereign." As to the defendants' claim that the state prosecution was a "tool" of the federal government, the court found that the "defendants did not tender a prima facie double jeopardy claim ... and offered only unsubstantiated allegations in support of their claim." The court added, however, that it had conducted an *"in camera* investigation to see if there was any evidence that the defendants' state prosecutions were arguably a tool of the federal government," and that at this hearing, the facts showed "that there were individual investigations by both sovereigns and different grand jury witnesses. Even though there was some cooperation between the prosecutors, this is common practice and has been

---

1. *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *United States v. Hayes*, 589 F.2d 811 (5th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979).

approved by the Supreme Court." The court held that the Justice Department's *Petite* policy "is not a weapon available to the defendants to attack their indictment. The court's *in camera* investigation clearly shows that the United States followed the *Petite* policy...."

The defendants appealed the court's denial of their motion to dismiss. Because the district court found the double jeopardy claim frivolous, it retained jurisdiction for trial under the rule of *United States v. Dunbar*, 611 F.2d 985 (5th Cir.), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980). The Fifth Circuit denied an emergency motion for a stay of the trial pending appeal, and on May 21, 1986, the appeal of the denial of the motion to dismiss was consolidated with the post-trial appeal.

## II

The defendants' double jeopardy claim must fail since, as the defendants fully acknowledge in their brief, the established law is squarely set against their position.

▪ The Double Jeopardy Clause of the Constitution provides in relevant part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The defendants argue that the Double Jeopardy Clause was violated by the government because it tried them for the same acts that the state had tried them for earlier. The Supreme Court, however, has held that based on the "dual sovereignty" concept which underlies the federal union, an act of a defendant may be made a crime under both federal and state laws and the defendant may be punished by each sovereign for the same act without offending the Double Jeopardy Clause. *Abbate v. United States*, 359 U.S. 187, 195, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959); *United States v. Lan-*

*za*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). The defendants argue that the dual sovereignty doctrine is unwise or flawed. But the defendants do not argue that the Supreme Court cases espousing the dual sovereignty doctrine are inapplicable or have been overruled. The defendants' double jeopardy argument must therefore be rejected because this court is without authority to disregard applicable Supreme Court precedent.

## III

The defendants more seriously argue that their case fits within an exception to the dual sovereignty doctrine because the collusion between federal and state prosecutors blurred separation of sovereignty to the extent that the defendants were effectively prosecuted twice by the same sovereign. The defendants contend that the Supreme Court has held that the dual sovereignty doctrine is subject to the qualification that the state prosecution may not be used merely as a cover and tool for a federal prosecution. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).[2]

▪ The Fifth Circuit has established procedures for handling double jeopardy claims, such as this one, prior to trial. In *United States v. Stricklin*, 591 F.2d 1112 (5th Cir.1979), this court held that the burden of going forward by putting the double jeopardy claim in issue is and should be on the defendant, but that once the defendant tenders a prima facie nonfrivolous double jeopardy claim, the burden of persuasion shifts to the government. *Id.* at 1117–18. In this case, the district court held that the defendants had not discharged their burden of making out a prima facie nonfrivolous claim that the state prosecution was a mere tool of federal prosecution. The district court held that the defendants' claim rested

---

**2.** It is unclear whether such a holding has been established by the Supreme Court. As the government points out, the Court in *Bartkus* held that the record failed to establish the petitioner's claim that the state's prosecution had been a tool of the federal authorities. 359 U.S. at 123–24, 79 S.Ct. at 678. The Court, therefore, did not squarely address the issue of whether, if substantiated by the record, a "sham" situation would constitute an exception to the dual sovereignty doctrine.

on unsubstantiated allegations. The district court concluded that these allegations were not sufficient to make out a prima facie case on the double jeopardy issue. We find no reason to overturn the district court's finding.

## IV

█ The defendants' *Petite* -policy argument is also without merit. According to the Justice Department's dual prosecution policy,[3] federal prosecution following state prosecution for the same act is allowed only where there are compelling reasons, and the prosecuting attorney obtains prior approval from an assistant United States attorney general. *See Rinaldi v. United States*, 434 U.S. 22, 28, 98 S.Ct. 81, 84, 54 L.Ed.2d 207 (1977) (per curiam) (describing the mechanics of the policy). The defendants argue that the government failed to adhere to the *Petite* policy in their case. They have not, however, established a factual basis for this claim, and even if they did, it would be irrelevant.

It has been clearly established that since the *Petite* policy is an internal rule, criminal defendants may not invoke it to bar prosecution by the federal government. *United States v. Schwartz*, 787 F.2d 257, 267 (7th Cir.1986); *United States v. Thomas*, 759 F.2d 659, 668 (8th Cir.1985); *United States v. Catino*, 735 F.2d 718, 725 (2d Cir.1984); *United States v. Nelligan*, 573 F.2d 251, 255 (5th Cir.1978). Moreover, there is a good reason for this view. To enforce the *Petite* policy against the government may encourage the government to abandon the policy, which could hardly be in the interests of justice. *United States v. Schwartz*, 787 F.2d at 267.

Since we adhere to the established rule that the *Petite* policy may not be enforced against the government by defendants, we must reject the defendants' claim that they should not have been prosecuted because the government failed to adhere to the *Petite* policy.

3. The Supreme Court's first acknowledgment of this dual-prosecution policy was in *Petite v.*

## V

█ As we have earlier noted, the district court held, and correctly so, that the allegations of the defendants were too insubstantial to make out a prima facie case on their double jeopardy claim, and that they were therefore not entitled to any further inquiry on the issue. The court nonetheless, as a precautionary measure, made an *ex parte, in camera* inquiry into the nature of the federal and state collaboration behind the investigation and prosecution of the defendants. The defendants argue that the district court's *ex parte, in camera* procedure violated their rights under the confrontation and due process clauses as well as their rights to the effective assistance of counsel. We need not consider these claims because any possible errors made by the district court in connection with its *ex parte, in camera* inquiry would be harmless. Error which the court determines to be harmless is to be disregarded. Fed.R.Crim.P. 52(a). A reviewing court, however, may decline to reverse for constitutional error only if the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We add our view, however, that given the circumstances and posture presented by the facts, or lack thereof, of this case, we think the district court handled the matter in a commendable fashion.

Since the defendants were not entitled to any further inquiry into their claims by the court, we believe that any errors made by the district court in conducting an inquiry as a precautionary matter would be harmless beyond a reasonable doubt.

## VI

For the reasons already discussed, we conclude that the appeals of the defendants lack merit. Accordingly, their convictions are AFFIRMED.

*United States*, 361 U.S. 529, 530–31, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960) (per curiam).